# IN THE
# United States Court of Appeals
## FOR THE SIXTH CIRCUIT

OHIO A. PHILIP RANDOLPH INSTITUTE; LEAGUE OF WOMEN VOTERS OF OHIO; LINDA GOLDENHAR; DOUGLAS BURKS; SARAH INSKEEP; CYNTHIA LIBSTER; KATHRYN DEITSCH; LUANN BOOTHE; MARK JOHN GRIFFITHS; LAWRENCE NADLER; CHITRA WALKER; RIA MEGNIN; ANDREW HARRIS; AARON DAGRES; ELIZABETH MYER; TERESA THOBABEN; CONSTANCE RUBIN; HAMILTON COUNTY YOUNG DEMOCRATS; TRISTAN RADER; NORTHEAST OHIO YOUNG BLACK DEMOCRATS; BETH HUTTON; THE OHIO STATE UNIVERSITY COLLEGE DEMOCRATS,

*Plaintiffs-Appellees,*

GOVERNOR JOHN R. KASICH, In his official capacity; JON HUSTED, Secretary of State, in his official capacity; LARRY OBHOF, President of the Ohio Senate, in his official capacity; RYAN SMITH,

*Defendants-Appellees,*

*v.*

REPUBLICAN NATIONAL COMMITTEE; ADAM KINCAID; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE,

*Movants-Appellants,*

*and*

STEVE CHABOT, *et al.,*

*Intervenors.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
AT CINCINNATI

## BRIEF OF APPELLANTS

Jason Brett Torchinsky
HOLTZMAN VOGEL
  JOSEFIAK TORCHINSKY
45 N. Hill Drive
Suite 100
Warrenton, VA 20186
540-341-8808

*Counsel for Appellants Republican National Committee,*
*National Republican Congressional Committee,*
*Adam Kincaid.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to the Federal Rules of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Appellants certify that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome. Appellants are two national Republican party committees and an individual.

By: */s/ Jason Torchinsky*
Attorney for Appellants
Republican National Committee,
National Republican
Congressional Committee,
and Adam Kincaid

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................... i

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES ................................................................ iv

STATEMENT REGARDING ORAL ARGUMENT ............................................1

JURISDICTIONAL STATEMENT .......................................................1

STANDARD OF REVIEW ...................................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................4

STATEMENT OF THE CASE ................................................................4

SUMMARY OF THE ARGUMENT ....................................................10

ARGUMENT.................................................................................12

I.    THIS APPEAL IS PROPERLY BEFORE THIS COURT ....................12

    a.   This Court Has Jurisdiction to Review the District Court's First Amendment Privilege Decision Under the Collateral Order Doctrine .............................................................................12

        i.  The District Court's Order Conclusively Determined the RNC, NRCC, and Kincaid's First Amendment Privilege Rights ....................................................................14

        ii. The Scope of the First Amendment Privilege is Completely Separate from the Merits of the Case Below..............................15

        iii. The First Amendment Privilege is Effectively Unreviewable on Appeal from a Final Judgment..............................................15

b.   Alternatively, the District Court's Order Is Reviewable Under this Court's Mandamus Jurisdiction ...............................................17

    i.   Standard of Review ....................................................................18

    ii.  Appellants have No Other Adequate Means of Appeal to Attain the Relief Sought ...........................................................19

    iii. The RNC, NRCC, and Kincaid Will Be Prejudiced in a Way Not Correctable on Appeal .......................................................20

    iv.  The District Court's Order Raises a New Problem and is an Important Issue of First Impression for the Sixth Circuit ..........21

II.   THE DOCUMENTS ARE PROTECTED UNDER THE FIRST AMENDMENT PRIVILEGE ................................................................22

a.   The First Amendment Privilege......................................................22

    i.   The RNC, NRCC, and Kincaid Satisfied the Low Burden of a Prima Facie Case ...................................................................26

        1.  Allegations of Violence, Economic Reprisals, or Harassment are not Required to Assert the First Amendment Privilege .......................................................31

    ii.  The Documents Sought are not Crucial to Plaintiff-Appellees' Case........................................................................33

        1.  The District Court Failed to Shift the Burden....................35

        2.  The District Court Used the Incorrect Standard.................38

            a.  The District Court Improperly Disregarded the Directly Analogous Situation Presented in *Perry v. Schwarzenegger* ...........................................................41

    iii. Plaintiff-Appellees did not Exhaust Every Reasonable Alternative Source of Information .............................................44

      b.    The RNC, NRCC, and Kincaid Affidavits are Sufficient to
Support a First Amendment Privilege Claim ...................................47

III.    The District Court's Confidentiality Order is Insufficient to Protect
the RNC, NRCC, and Kincaid's Interests................................................49

CONCLUSION....................................................................................................53

CERTIFICATE OF COMPLIANCE....................................................................54

CERTIFICATE OF SERVICE.............................................................................55

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............56

# TABLE OF AUTHORITIES

## CASES

*ACLU of Ohio v. Taft*,
   385 F.3d 641 (6th Cir. 2004)........................................................46

*AFL-CIO v. FEC*,
   333 F.3d 168 (D.C. Cir. 2003) ..........................................*Passim*

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983).....................................................................22

*Anwar v. Dow Chemical Co.*,
   876 F.3d 841 (6th Cir. 2017)..................................................3, 26

*Ariz. State Legis. v. Ariz. Independent Redistricting Commission*,
   135 S. Ct. 2652 (2015)................................................................42

*Bauman v. United States District Court*,
   557 F.2d 650 (9th Cir. 1977).....................................................19

*In re: Bendectin Products Liability Litigation*,
   749 F.2d 300 (6th Cir. 1984)..............................2, 3, 18, 19, 20, 21

*Bethune-Hill v. Va. State Bd. of Elections*,
   114 F. Supp. 3d 323 (E.D. Va. 2015) .................................46, 47

*Black Panther Party v. Smith*,
   661 F.2d 1243 (D.C. Cir. 1981) .......................................*Passim*

*Buckley v. Valeo*,
   424 U.S. 1 (1976)..................................................................22, 23

*Carey v. Wynn*,
   439 U.S. 8 (1978)...........................................................................2

*Chesher v. Allen*,
   122 Fed. Appx. 184 (6th Cir. 2005) ...............................2, 18, 21

*In re: Chimenti*,
    79 F.3d 534 (6th Cir. 1996) ........................................................21

*Connection Distributing Co. v. Reno*,
    154 F.3d 281 (6th Cir. 1998)........................................................23

*Davis v. Bandemer*,
    478 U.S. 109 (1986)........................................................................37

*In re: Deliverance Christian Church*,
    2011 Bankr. LEXIS 5219 (N.D. Ohio 2011) ...............................25

*EEOC v. K-Mart Corp.*,
    694 F.2d 1055 (6th Cir. 1982) .....................................................18

*Easley v. Cromartie*,
    532 U.S. 234 (2001)........................................................................37

*FEC v. Machinists Non-Partisan Political League*,
    655 F.2d 380 (D.C. Cir. 1981) .....................................................23

*F&J Enterprises, Inc. v. Columbia Broadcasting Systems, Inc.*,
    373 F. Supp. 292 (S.D. Ohio 1974)..............................................48

*In re First National Bank*,
    701 F.2d 115 (10th Cir. 1983)......................................................50

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) ..................................................................34

*Goldstein v. Cox*,
    396 U.S. 471 (1970)..........................................................................2

*Grandbouche v. Clancy*,
    825 F.2d 1463 (10th Cir. 1987).....................................................51

*Holt-Orsted v. City of Dickson*,
    641 F.3d 230 (6th Cir. 2010)....................................................1, 12

*International Action Ctr. v. United States*,
    207 F.R.D. 1 (D.D.C. 2002) .................................................................50, 52

*International Union, Etc. v. National Right to Work Committee*,
    590 F.2d 1139 (D.C. Cir. 1978) ................................................................23

*Lamone, et al. v. Benisek, et al.*,
    No. 18-726 (U.S. Dec. 6, 2018)............................................................ 10, 34

*League of Women Voters v. Johnson*,
    902 F.3d 572 (6th Cir. 2018) ......................................................................2

*MTM, Inc. v. Baxley*,
    420 U.S. 799 (1975)....................................................................................2

*Marshall v. Bramer*,
    828 F.2d 355 (6th Cir. 1987) .....................................................................12

*Mohawk Industrial v. Carpenter*,
    558 U.S. 100 (2009)......................................................... 13, 15, 16, 19, 20

*Moldowan v. City of Warren*,
    578 F.3d 351 (6th Cir. 2009).....................................................................14

*In re Motor Fuel Temperature Sales Practices Litigation*,
    641 F.3d 470 (10th Cir. 2011)....................................................................48

*NAACP v. Alabama*,
    357 U.S. 449 (1958).............................................................................22, 32

*N.Y. State NOW v. Terry*,
    886 F.2d 1339 (2d Cir. 1989) ....................................................................27

*Ohio Organization Collaborative v. Husted*,
    2015 U.S. Dist. LEXIS 153279 (S.D. Ohio Nov. 12, 2015) ........ 23, 24, 50, 52

*In re Perrigo Co.*,
    128 F.3d 430 (6th Cir. 1997).............................................................1, 17, 18

*Perry v. Brown*,
　671 F.3d 1052 (9th Cir. 2012) ....................................................42

*Perry v. Schwarzenegger*,
　591 F.3d 1147 (9th Cir. 2010) ............................................. *Passim*

*Perry v. Schwarzenegger*,
　2009 U.S. App. LEXIS 27064 (9th Cir. Dec. 11, 2009) ...............13

*Ripon Society v. National Republican Party*,
　525 F.2d 567 (D.C. Cir. 1975) ...................................................24

*Rucho, et al. v. Common Cause, et al.*,
　No. 18-422 (U.S. Oct. 3, 2018) ...........................................10, 34

*Schlagenhauf v. Holder*,
　379 U.S. 104 (1964) ....................................................................21

*Tashjian v. Republican Party*,
　479 U.S. 208 (1986).............................................................22, 23

*Tree of Life Christian, Sch. v. City of Upper Arlington*,
　2012 U.S. Dist. LEXIS 32205 (S.D. Ohio 2012).................. *Passim*

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of America, Inc.*,
　444 F.3d 462 (6th Cir. 2006)....................................................1, 12

*Upjohn Co. v. United States*,
　449 U.S. 383 (1981).....................................................................13

*Van Cauwenberghe v. Biard*,
　486 U.S. 517 (1988) .....................................................................28

*Virginia v. Hicks*,
　539 U.S. 113 (2003).....................................................................28

*Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*,
　429U.S. 252 (1977)......................................................................37

*Will v. Hallock*,
    546 U.S. 345 (2006).....................................................................14

*Zerilli v. Smith*,
    656 F.2d 705 (D.C. Cir. 1981) ....................................................35

## STATUTES & RULES

42 U.S.C. § 1983...............................................................................1
52 U.S.C. § 30109(d) ......................................................................32
28 U.S.C. § 1651 .............................................................................18
28 U.S.C. § 2284(a) ..........................................................................1
28 U.S.C. § 1292................................................................................2

Cal. Elec. Code § 342 .....................................................................42

Fed. R. App. P. 28(a)(4)(A) ..............................................................1
Fed. R. App. P. 34(a) .........................................................................1
Fed. R. Civ. P. 26(b)(1).....................................................................39

## CONSTITUTIONAL AMENDMENTS

U.S. Const. amend. I..............................................................*Passim*
U.S. Const. amend. XIV .............................................. 1, 4, 22, 40, 42

## STATEMENT REGARDING ORAL ARGUMENT

Due to the pressing time constraints of this litigation including the start of trial, Appellants do not seek oral argument. However, should this Court feel that oral argument would assist it in making a swift determination on the merits of this appeal, Appellants respectfully request that oral argument be set at the Court's first available opportunity. *See* Fed. R. App. P. 34(a).

## JURISDICTIONAL STATEMENT

Plaintiffs' Complaint asserts violations of the First and Fourteenth Amendments and Article I, Sections II and IV of the U.S. Constitution pursuant to 42 U.S.C. § 1983. Because the underlying challenge is to a congressional apportionment, a three-judge court was empaneled pursuant to 28 U.S.C. § 2284(a). *See* Fed. R. App. P. 28(a)(4)(A).

It is an open question if this Court has jurisdiction over this appeal under the collateral order doctrine. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1154-56 (9th Cir. 2010). While the appeal of a district court's discovery order is typically not immediately appealable absent a finding of contempt, *see Holt-Orsted v. City of Dickson*, 641 F.3d 230, 237038 (6th Cir. 2010); *see also United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am., Inc.,* 444 F.3d 462, 471 (6th Cir. 2006), "the distinctions between the First Amendment privilege" and other privileges "are not insubstantial" and therefore jurisdiction is proper. *See Perry*, 591 F.3d at 1156.

In the alternative[1], this Court has mandamus jurisdiction. *See In re Bendectin Products Liability Litigation,* 749 F.2d 300, 303-304 (6th Cir. 1984) (hereinafter, *Bendectin*)*; see also In re Perrigo Co.,* 128 F.3d 430, 435 (6th Cir. 1997). This appeal raises issues of first impression in the Sixth Circuit, and the balance of which will tip favorably toward this Court's mandamus jurisdiction. *See Bendectin*, 128 F.2d at 304. This is especially true as this Court "takes a more flexible approach to mandamus than other circuits" particularly as it relates to the review of privilege decisions. *Chesher v. Allen*, 122 Fed. Appx. 184, 187 (6th Cir. 2005) (per curiam).

Finally, even though this is an appeal from a three-judge panel, the appeal is properly before this Court because the order being appealed does not involve the grant or denial of an injunction concerning the merits of Plaintiffs' constitutional claims. *See MTM, Inc. v. Baxley*, 420 U.S. 799, 803 (1975); *Carey v. Wynn*, 439 U.S. 8 (1978) (per curiam); *Goldstein v. Cox*, 396 U.S. 471, 478-79 (1970); *League of Women Voters v. Johnson*, 902 F.3d 572, 576-77 (6th Cir. 2018) (reviewing the

---

[1] The district court here contemplated that an appeal of its order was possible, if not probable, in its Order Granting Plaintiffs' Motion to Compel. *See* (ECF No. 128) (Page ID# 3482) ("If this Order is reversed on appeal, the Parties' attorneys will immediately destroy or return . . . all copies of the documents and files . . . [i]f a reviewing court affirms this Order, then any document or file produced pursuant to this Order will no longer be designated 'Attorneys' Eyes Only' . . . .'") (also predicating the protective order on appeal within "**SEVEN DAYS**" (emphasis in original)). Assuming this language is insufficient under § 1292, the court's language evidences the "substantial ground for differences of opinion" inherent in Appellants' First Amendment Privilege claim. *See* 28 U.S.C. § 1292.

denial of intervention from a decision of a three-judge panel convened in a redistricting case).

## STANDARD OF REVIEW

Typically, a district court's discovery orders are reviewed for an abuse of discretion. *See Anwar v. Dow Chem. Co.,* 876 F.3d 841, 854 (6th Cir. 2017). As such, "[r]eversal is proper" when the Court is "firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error." *Id*. Therefore, if this Court reviews this appeal under the collateral order doctrine, an abuse of discretion standard applies.

If this Court believes that the only way to properly review this case is under its mandamus powers then a different standard of review applies. *See Bendectin*, 749 F.2d at 304. One of the factors this Circuit considers when reviewing mandamus is that the "district court's order is clearly erroneous as a matter of law." *Id*. However, given the flexibility of the mandamus review factors, there is certainly room for this Court to review the district court's order under an abuse of discretion standard and yet still find mandamus review appropriate. *See id*. ("The guidelines are cumulative and may not all point to the same conclusion."). In either event, Appellants will show that the district court's First Amendment privilege discovery order was clearly erroneous and therefore, worthy of reversal under any standard this Court may chose to apply.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether this Court reviews discovery orders involving third-parties asserting a constitutional, rather than common law, privilege under the collateral order exception to the final judgment rule or, alternatively, under this Court's mandamus powers?

2. Whether the three-judge district court abused its discretion and/or committed clear error when it ordered production of documents designated as privileged under the First Amendment to the RNC, NRCC, and Kincaid's political opponents despite a showing of *prima facie* harm?

## STATEMENT OF THE CASE

Over seven years and three election cycles after the 2011 congressional reapportionment, the Ohio A. Philip Randolph Institute, the League of Women Voters of Ohio, Hamilton County Young Democrats, Northeast Ohio Young Black Democrats, Ohio State University College Democrats, and seventeen individual Ohio voters (collectively "Plaintiffs", "Plaintiff-Appellees" or "Appellees") challenged Ohio's Congressional Districts as partisan gerrymanders in violation of the First and Fourteenth Amendments as well as Article I of the U.S. Constitution. *See generally* Second Amend. Compl. (ECF No. 37) (Page ID# 287).

Plaintiffs served a subpoena on June 28, 2018 to Adam Kincaid—who at the relevant time period was the National Republican Congressional Committee's

("NRCC") Redistricting Coordinator. They also served subpoenas on the Republican National Committee ("RNC") on July 2, 2018 and the NRCC on July 2, 2018. Plaintiffs requested documents from 2009 through the end of 2012. Sheehy Aff. ¶ 13, No. 1:18-mc-31 (ECF No. 11-1) (Page ID# 442)[2]. Plaintiffs asserted that they seek documents to prove whether Ohio Legislators drew congressional districts with partisan intent. Pls.' Mem. in Supp. Mot. to Compel, No. 1:18-mc-31 (ECF No. 1-1) (Page ID# 3, 22).

As part of their discovery requests, Plaintiffs demanded numerous documents that seek to invade the RNC's, NRCC's, and Kincaid's protected communications about analysis and strategy concerning redistricting and the impact redistricting legislation will have on the association and its members. Plaintiffs demanded the following:

(1)      All documents concerning any proposed, draft, or final 2011 Ohio congressional district maps; RNC Request 2, No. 1:18-mc-31 (ECF No. 1-3) (Page ID# 50); NRCC Request 2, No. 1:18-mc-31 (ECF No. 1-3) (Page ID# 66); Kincaid Request 2, No. 1:18-mc-31 (ECF No. 1-3) (Page ID# 81);

(2)      All documents concerning any services the RNC and NRCC

---

[2] The Motion to Compel was originally filed in the United States District Court for the District of Columbia. Subsequently, the action was transferred to the district court, consolidated, and opened as 1:18-mc-31.

provided, along with Adam Kincaid, relating to the 2011 redistricting of Ohio's congressional districts, including communications with anyone—including Republican House Members, House Candidates, Ohio Republican Party members, Ohio Republican legislators and legislative staff—regarding Ohio's congressional district map, and analyses that the RNC, NRCC, or Kincaid conducted concerning the Ohio map. RNC Requests 3, 5, 7-9, 1:18-mc-31 (ECF No. 1-3) (Page ID# 50-52); NRCC Request 3, 5, 7-9, 1:18-mc-31 (ECF No. 1-3) (Page ID# 66-68); Kincaid Request 4, 5, 7-8, 10-13, 1:18-mc-31 (ECF No. 1-3) (Page ID# 82-85);

(3)     All documents concerning the involvement of the RNC, NRCC, RSLC, and State Government Leadership Foundation in the redistricting of Ohio's congressional districts. RNC Request 4, 1:18-mc-31 (ECF No. 1-3) (Page ID# 50); NRCC Request 4, 1:18-mc-31 (ECF No. 1-3) (Page ID# 66);

(4)     All documents concerning RNC or NRCC conference trainings or meetings where Ohio's congressional districts were discussed or where Ohio map drawers were present. RNC Request 10, 1:18-mc-31 (ECF No. 1-3) (Page ID# 52); NRCC Request 10, 1:18-mc-31

(ECF No. 1-3) (Page ID# 68), Kincaid Request 14, 1:18-mc-31 (ECF No. 1-3) (Page ID# 85); and

(5)     All documents concerning the process as to how the Ohio congressional district maps were drawn including communications with Ohio legislators, Ohio members of Congress, and others concerning their input for the Ohio congressional map. Kincaid Request 6, 1:18-mc-31 (ECF No 1-3) (Page ID# 83).

Appellants timely served objections asserting that the information sought was protected under, *inter alia*, the First Amendment privilege. Oldham Aff. ¶ 3, 1:18-mc-31 (ECF No 11-2) (Page ID# 459); Winkelman Aff. ¶ 3, 1:18-mc-31 (ECF No. 11-2) (Page ID# 465); Kincaid Aff. ¶¶ 3-4, 1:18-mc-31 (ECF No. 11-2) (Page ID# 472); *see also* Sheehy Aff ¶ 11, 1:18-mc-31 (ECF No. 11-1) (Page ID# 443).

After reaching an agreement with Plaintiffs on the production of non-privileged documents, Appellants began a rolling production on August 31, 2018.[3] The RNC, NRCC, and Kincaid withheld documents under the First Amendment privilege because they contained mental impressions and analyses that were, *inter alia*, intended to develop strategies to assist Republican House Members win their

---

[3] Due to the expansive nature of the search terms provided by Plaintiffs, the RNC, NRCC, and Kincaid retrieved more than 23,000 documents. The majority of documents were deemed irrelevant to Plaintiffs' requests and some 75 documents were produced. Sheehy Aff. ¶ 5, 1:18-mc-31 (ECF No. 11-1) (Page ID# 443).

elections.[4] Oldham Aff. ¶ 9, 1:18-mc-31 (ECF No 11-2) (Page ID# 461); Winkelman Aff. ¶ 12, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468); Kincaid Aff. ¶ 17, 1:18-mc-31 (ECF No. 11-2) (Page ID# 474).

Unhappy with Appellants' assertion of various privileges, Plaintiffs, on October 12, 2018, filed the following motions: (1) to compel production in the United States District Court for the District of Columbia, Mot. to Compel, No. 1:18-mc-31 (ECF Nos. 1 & 1-1) (Page ID# 1-30); (2) to transfer the case to the United States District Court for the Southern District of Ohio and to expedite, Mot. to Transfer & Expedite, No. 1:18-mc-31 (ECF No. 2) (Page ID# 292-299). The Motion to Expedite was granted on October 19, 2018. 1:18-mc-31 (ECF No. 6) (Page ID# 305). Appellants subsequently opposed transfer and then, on October 25, 2018, filed their Memorandum in Opposition to Plaintiffs' Motion to Compel. No. 1:18-mc-31 (ECF No. 9) (Page ID# 313-388): On October 31, 2018, Judge Contreras granted Plaintiffs' Motion to Transfer. No. 1:18-mc-31 (ECF No. 12) (Page ID# 495). On December 4, 2018, Adam Kincaid sat for a deposition at the offices of Covington & Burling. At the deposition, Plaintiffs' counsel asked several invasive questions about the internal workings of the association. To preserve the First Amendment rights of

---

[4] The primary purpose of the RNC and NRCC is to assist Republican members in winning elections. Accordingly, it is necessary to know the precise contours and composition of congressional districts. Oldham Aff. ¶ 11, 1:18-mc-31 (ECF No 11-2) (Page ID# 461); Winkelman Aff. ¶ 14, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468).

the association, Mr. Kincaid, at the instruction of counsel, refused to answer these questions. *See generally* Resp. Supplemental Mem. in Opp.'n (ECF No. 126) (Page ID 3199-3206) (sealed).

After the transfer of this case to the Southern District of Ohio, the district court ordered supplemental briefing by the parties. Minute Entry and Notation Order (November 5, 2018). Appellants filed their Supplemental Memorandum on November 14, 2018. (ECF No. 96) (Page ID 3199-3206). This was followed shortly thereafter by Plaintiffs' Supplemental Memorandum on November 16, 2018. (ECF No. 97) (Page ID# 918-925). On December 21, 2018, the district court issued its Order Granting Plaintiffs' Motion to Compel.[5] (ECF No. 3465-3483). On December 24, 2018, the RNC, NRCC, and Kincaid filed an Emergency Motion to Stay in the district court and filed their Notice of Appeal. (ECF No. 129) (Page ID# 3483-3501) The district court, at the request of Plaintiffs, set a status conference for December 28, 2018 to discuss production and Motion for Stay. The stay motion was denied at the Status Conference. Minute Entry and Notation Order (December 28, 2018). Furthermore, the district court gave Appellants a hard deadline of Friday January 4, 2019 at noon to produce documents. *Id.*; *see also* Notation Order (January 3, 2019).

---

[5] The Order provides for an attorneys'-eyes-only provision which is in effect *only* as long as this case is on appeal. Additionally, the parties are free to request leave of court to use the documents in a filing or at trial even with the "eyes only" provision in effect. Order Granting Mot. Compel (ECF No. 128) (Page ID# 3465-3483).

On December 30, 2019, Appellants filed a Motion to Expedite appeal in this Court. (Doc. No. 7). The Motion was granted as to the briefing schedule only on January 3, 2019.[6] (Doc. No. 9-1, 9-2). Additionally on January 3, 2019, Plaintiffs' subpoenaed Mr. Kincaid to once again appear for a deposition at the offices of Covington & Burling in Washington, D.C. The documents were produced to Plaintiffs under the district court's "attorneys'-eyes-only" provision at 11:26 a.m. on January 4, 2019.

## SUMMARY OF THE ARGUMENT

This Court should reverse the district court's grant of Plaintiffs' Motion to Compel because the First Amendment privilege was properly invoked and is imminently applicable to the facts of this case. Initially, the district court proceeds from a false premise. The standard it has adopted to review the underlying partisan gerrymandering claim is one that has never been endorsed by the Supreme Court[7] and is, in its own right, deeply flawed. In effect, the district court denied Appellants their rights under the U.S. Constitution—including the right to speak and associate for the advancement of shared beliefs—based on a flawed view of both the First

---

[6] To protect their rights, Appellants will be moving for a Stay Pending Appeal in this Court to stay both the deposition of Mr. Kincaid as well as district court's order. Appellants anticipate the stay motion will be filed no later than January 11, 2019.

[7] In fact, two partisan gerrymandering cases were set for the Supreme Court's March hearing calendar on January 4, 2019. *See Rucho v. Common Cause*, No. 18-422 (U.S. Oct. 3, 2018) (argument set for March, jurisdiction postponed); *Lamone v. Benisek,*, No. 18-726 (U.S. Dec. 6, 2018) (argument set for March, jurisdiction postponed).

Amendment privilege and the legal standard by which partisan gerrymandering claims are decided.

Appellants properly appeal the district court's grant of Plaintiffs' Motion to Compel under the collateral order exception to the final judgment rule or, alternatively, under this Court's mandamus jurisdiction. The First Amendment privilege is predicated on the right to assemble freely, even in secret. The great weight of authority in the Sixth Circuit instructs that this Court should take this appeal, either as a collateral order or under mandamus, because of the harm to Appellants' constitutional rights. Additionally, the exact scope of the First Amendment privilege represents a novel question for this Court, and therefore represents a case worthy of this Court's review.

The district court committed clear error when reviewing Appellants' First Amendment privilege. It failed to properly heed cases from both within this circuit and from sister circuits that are directly on point. Appellants demonstrated a *prima facie* harm, as the district court correctly found, yet the district court failed to place the burden on Plaintiffs, as it was required to do, to identify a "crucial" need for Appellants' documents. Furthermore, the district court improperly discounted the potential chilling effect disclosure of purely internal communications will have on the RNC, NRCC, and Mr. Kincaid. For these reasons, and more, this Court should reverse the district court.

## ARGUMENT

## I. THIS APPEAL IS PROPERLY BEFORE THIS COURT.

### a. This Court Has Jurisdiction to Review the District Court's First Amendment Privilege Decision Under the Collateral Order Doctrine.

Ordinarily, an appeal of a discovery order is not reviewable under the collateral order doctrine, even in the case of non-parties. *See Holt-Orsted v. City of Dickson*, 641 F.3d 230, 236 (6th Cir. 2011). However, an appeal of a denial of the First Amendment privilege represents an issue of first impression for this Circuit. *Tree of Life Christian Sch., v. City of Upper* Arlington, 2012 U.S. Dist. LEXIS, *6 (S.D. Ohio 2012) (citing *Marshall v. Bramer,* 828 F.2d 355, 359 (6th Cir. 1987)). And it is not that *all* discovery orders are *per se* unreviewable under the collateral order doctrine, it is that they "*ordinarily*" are not. *See United States ex rel. Pogue,* 444 F.3d at 471 (6th Cir. 2006) (emphasis added); *see also Perry*, 591 F.3d at 1154-56 (reviewing the "close question" if the collateral order doctrine is available in the First Amendment privilege context in light of the Supreme Court's opinion in *Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009) and "assuming without deciding" that it is not).[8]

---

[8] In *Perry v. Sch*warzenegger, 2009 U.S. App. LEXIS 27064, *15 (9th Cir. Dec. 11, 2009), the Ninth Circuit found that the collateral order doctrine *would* allow review of a First Amendment privilege discovery order. In that opinion, the Court went on to find that there was, alternatively, mandamus jurisdiction should the court be incorrect about collateral order jurisdiction. *Id*. ("We are therefore inclined to

Furthermore, while most privileges arise out of common law, *see Upjohn Co. v. United States*, 449 U.S. 383 (1981) ("The attorney-client privilege is the oldest of the privileges . . . known to common law."), the First Amendment privilege arises out of a "high order" right to freedom of political association which "differs [from attorney-client privilege] in ways that matter to the collateral order appeal analysis." *Perry*, 591 F.3d at 1155. While "[t]he constitutional nature of the right is not dispositive of the collateral order inquiry, . . . it factors into our analysis." *Id.* at 1155-56 (internal citation omitted).

There are "three conditions" to bring an appeal under the collateral order doctrine: "that an order '(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Moldowan v. City of Warren*, 578 F.3d 351, 368 (6th Cir. 2009) (*quoting Will v. Hallock*, 546 U.S. 345, 349 (2006)). In the First Amendment privilege context, the first two factors are easily

---

conclude that we have jurisdiction under the collateral order doctrine. Given that this is a close question, however, we recognize that if we do not have collateral order jurisdiction, we then could — and would — rely on our authority to hear this exceptionally important appeal under the mandamus authority . . . ."). The Ninth Circuit then published an "Amended Opinion" on January 4, 2010 amending the language to say "[g]iven our uncertainty about the availability of collateral order review after *Mohawk*, we nonetheless assume without deciding that discovery orders denying claims of First Amendment privilege are not reviewable under the collateral order doctrine." *Perry*, 591 F.3d at 1156.

met, and the third presents an interesting question for the courts. *See Perry*, 591 F.3d at 1154-56.

      i.   <u>The District Court's Order Conclusively Determined the RNC, NRCC, and Kincaid's First Amendment Privilege Rights.</u>

"The first prong is easily satisfied in this case." *Perry*, 591 F.3d at 1154. The district court's December 21st Order Granting the Motion to Compel and its December 28th Order Denying Respondents' Motion to Stay conclusively determined the scope of First Amendment privilege in this case. *See* Order Granting Mot. Compel (ECF No. 128) (Page ID# 3470-78); Notation Order (December 28, 2019); *see also* Notation Order (January 3, 2019). The district court concluded that "the interest in obtaining these documents to support a crucial element of their partisan gerrymandering claim simply outweighs Respondents' sweeping and conclusory claims of privilege." Order Granting Mot. Compel. (ECF No. 128) (Page ID# 3476). As such, in so far as the district court is concerned, the First Amendment privilege has been conclusively determined to not protect the vast majority of privileged documents in this case.[9] *See id*. at (Page ID# 3470-76). Therefore, the first element of the collateral order doctrine analysis is met. *See Perry*, 591 F.3d at 1154-55.

---

[9] The district court provided that Plaintiffs did not demonstrate a need for documents that "pertain[] *exclusively* to states other than Ohio." Order Granting Mot. Compel. (ECF No. 128) (Page ID# 3475) (emphasis added).

ii. The Scope of the First Amendment Privilege is Completely Separate from the Merits of the Case Below.

This element of the analysis is also easily met. "The overall scope of the First Amendment privilege is a question of law that is entirely separate from the merits of the litigation." *Perry*, 591 F.3d at 1155. While the Plaintiffs bring a First Amendment claim against the State of Ohio, any "theor[etical] . . . overlap with merits-related issues" is unnecessary to the review of the First Amendment privilege. *See Perry*, 591 F.3d at 1155. "There is, therefore, no "overlap" between the issues we must decide in this appeal and the "factual and legal issues of the underlying dispute." *Id.* (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988)).

iii. The First Amendment Privilege is Effectively Unreviewable on Appeal from a Final Judgment.

The third element, especially in light of the Supreme Court's holding in *Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009)[10], represents a much closer question. *See Perry*, 591 F.3d at 1155-56. *Mohawk* dealt with the reviewability of the attorney-client privilege under the collateral order doctrine. *See Mohawk Indus.*, 558 U.S. at 103. The specific question was "whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order." *Id.* at 107; *see also Perry*, 591 F.3d at 1155.

---

[10] *Mohawk* specifically reserved the question on whether its application applied to other privileges. *Mohawk Indus.*, 558 U.S. at 113 n.4.

The Mohawk court found that, as far as the attorney-client privilege was concerned, the third element of the analysis would not be fulfilled because it involved "the routine application of settled legal principles" which "are unlikely to be reversed on appeal . . . ." *Mohawk Indus.*, 558 U.S. at 110. The foundational reasoning in *Mohawk* is the lack of "discernable chill . . . in deciding how to freely speak" in the attorney-client context. *See id*. The very reasons that undergird *Mohawk* in the attorney-client context, however, support collateral order appeal in the First Amendment privilege context.

First, the First Amendment privilege is a "high order" privilege as it seeks to protect rights enshrined in the Constitution, not merely the common law. *See Perry*, 591 F.3d at 1155. Second, the potential "chill" to free speech and association is the *raison d'etre* of the First Amendment privilege. *See Tree of Life Christian, Sch.*, 2012 U.S. Dist. LEXIS at *7 ("[A] party must demonstrate an objectively reasonable probability that disclosure will chill associational rights" to assert the First Amendment privilege.); *see also Perry*, 591 F.3d at 1156 ("Compelled disclosures concerning protected First Amendment political associations have a profound chilling effect on the exercise of political rights."). This reason alone is sufficiently distinct to put the First Amendment privilege on separate footing than other common law privileges.

Further, since Appellants have made a *prima facie* case of First Amendment harm, it is undeniable that any review *after* final judgment in this case would be a pyrrhic victory. While there is an "attorneys'-eyes-only" provision currently in force, the district court reserved the right, on proper motion, to allow the documents ordered disclosed in order to be used in motions and at trial. Order Granting Mot. Compel (ECF No. 128) (Page ID# 3482). If and when this occurs, there is no going back.[11] The association will necessarily and inevitably be more careful with their internal communications since the First Amendment privilege, if appeal is only available after a final judgment, is an empty privilege.

Therefore, as all three elements of the collateral order rule have been met and, given the privileged place First Amendment rights are held in the federal courts and the United States writ large, this Court should abandon its general rule and allow this discovery appeal as a collateral appeal.

### b. <u>Alternatively, the District Court's Order Is Reviewable Under this Court's Mandamus Jurisdiction.</u>

Mandamus relief is appropriate when there is a "question of unusual importance necessary to the economical and efficient administration of justice or important issue of first impression." *In re Perrigo Co.,* 128 F.3d at 435 (quoting

---

[11] Even under the attorneys'-eyes-only provision, Appellants experience harms. However, the Appellants' harms are largely curable under the destruction provisions of the current order—assuming no document enters the record before either a stay is granted or this appeal is decided.

*EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1061 (6th Cir. 1982)); *see* 28 U.S.C. § 1651.

This Circuit generally takes a "flexible rather than rigid approach" to mandamus. *In re Perrigo Co.,* 128 F.3d at 435. This Circuit also "takes a more flexible approach to mandamus than other circuits" *Chesher*, 122 Fed. Appx. at 187; *see also In re Perrigo Co.,* 128 F.3d at 437. "[M]andamus is particularly appropriate to review discovery decisions that would not be appealable until final judgment, *especially* decisions related to privileges." *Chesher*, 122 Fed. Appx. at 187 (emphasis added) (collecting cases).

### i.  Standard of Review.

This Circuit follows five "guidelines . . . to help decide if the issuance of the writ was proper." *Bendectin,* 749 F.2d at 303. The five "guidelines" this Court considers when reviewing mandamus jurisdiction are as follows: "(1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law.[12] (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first

---

[12] The third factor is the primary subject of this brief. As such, the discussion of the district court's clear error is addressed *infra* at 22-53.

impression." *Bendectin,* 749 F.2d at 303-04; *see also In re Perrigo Co.,* 128 F.3d at 435. "[T]he guidelines are cumulative and may not all point to the same conclusion." *Bendectin*, 749 F.2d at 304 (quoting *Bauman v. United States Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977)).

     ii.  <u>Appellants have No Other Adequate Means of Appeal to Attain the Relief Sought.</u>

If an appeal under the collateral order doctrine is unavailable, then the RNC, NRCC, and Kincaid have no other adequate means of appeal but mandamus. *See Perry*, 591 F.3d at 1157[13] ("Assuming, as we are, that no collateral order appeal is available, the first factor is present."). The Supreme Court has endorsed this approach. *See Mohawk Indus*., 558 U.S. at 101 ("[L]itigants confronted with a particularly injurious or novel privilege ruling have several potential avenues of immediate review apart from collateral order . . . a party may petition the court of appeals for a writ of mandamus."). Once documents and deposition testimony are in the public sphere an after-the-fact appeal will be of little solace and any protection of the First Amendment will truly ring hollow.

---

[13] *Perry*, as a Ninth Circuit opinion, is especially instructive in this case as this Circuit adopted the five factor mandamus test from *Bauman*, 557 F.2d at 654-55. *Perry* is also particularly instructive since review of a denial of First Amendment privilege, the precise issue in *Perry*, is an issue of first impression for this Circuit.

### iii. The RNC, NRCC, and Kincaid Will Be Prejudiced in a Way Not Correctable on Appeal.

This factor, much like the third factor, is the object of extensive discussion in the merits sections below. *See infra*. "This guideline is closely related to the first." *Bendectin,* 749 F.2d at 303-04. In the First Amendment context "[a] post-judgment appeal would not provide an effective remedy, as no such review could prevent the damage that Proponents allege they will suffer or afford effective relief therefrom." *Perry*, 591 F.3d at 1157 (internal quotations and alterations omitted).

Under this, the second factor, the Court must "also consider the substantial cost imposed on the public interest." *Id*. Just like in *Perry* the district court "applied an unduly narrow conception of First Amendment privilege" which will impose the risk of compelled disclosure "to the myriad social, economic, religious, and political organizations" that support or oppose laws. *Id*. at 1158. "The potential chilling effect on political participation and debate is therefore substantial, even if the district court's error were eventually corrected on appeal from final judgment." *Id*. This factor should be enhanced by the fact that Appellants, as non-parties, will have no opportunity to defend or contextualize their internal communications in open court at trial, which will result in even further prejudice. Therefore, declining to issue mandamus jurisdiction in this case "would imperil a substantial public interest or some particular value of a high order." *Id*. (quoting *Mohawk Indus.,* 558 U.S. at 107).

iv.  <u>The District Court's Order Raises a New Problem and is an</u>
     <u>Important Issue of First Impression for the Sixth Circuit.</u>

The Supreme Court has endorsed the use of mandamus "to review unusual and important procedural questions" including those of first impression. *See In re Bendectin,* 749 F.2d at 306-07 (citing *Schlagenhauf v. Holder*, 379 U.S. 104 (1964)). The precise dimensions of the First Amendment privilege appears to be a question of first impression for this Court. *Tree of Life Christian, Sch.,* 2012 U.S. Dist. LEXIS 32205 at *6 ("[I]t does not appear that the United States Court of Appeals for the Sixth Circuit has enunciated a specific test with regard to a First Amendment Privilege . . . ."). Due to the collateral nature of discovery disputes, it is entirely possible that the First Amendment privilege will forever elude the Court of Appeals without the application of mandamus review. *See Perry*, 591 F.3d at 1159. Furthermore, in this Sixth Circuit, review of discovery questions are given preferential treatment in the mandamus analysis. *See Chesher*, 122 Fed. Appx. at 187.

Therefore, when taken together, the balance of the five guidelines certainly points to this Court exercising its mandamus jurisdiction. *See In re Perrigo Co.,* 128 F.3d at 435 ("*Bendectin* did not require that every element be met, observing the factors would often be balanced in opposition to each other." (*quoting In re: Chimenti*, 79 F.3d 534, 539 (6th Cir. 1996)).

## II. THE DOCUMENTS ARE PROTECTED UNDER THE FIRST AMENDMENT PRIVILEGE.

### a. The First Amendment Privilege.

Both the First and Fourteenth Amendments guarantee the "freedom to associate with others for the common advancement of political beliefs and ideas." *Buckley*, 424 U.S. at 15. As such, "the right of individuals to associate for the advancement of political beliefs . . . rank[s] among our most precious freedoms." *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983).

Because the right to free speech is enhanced through associating with others, *Buckley v. Valeo*, 424 U.S. 1, 15 (1976), and the associational right is effectively exercised when the association is able to formulate messages and develop strategies in private, *id.* at 75, courts have developed a framework to protect internal associational communications from disclosure. *See, e.g., NAACP v. Alabama*, 357 U.S. 449, 462 (1958) (The Supreme Court "has recognized the vital relationship between freedom to associate and privacy in one's associations."); *Perry*, 591 F.3d at 1162; *Tree of Life Christian, Sch.*, 2012 U.S. Dist. LEXIS 32205 at *5.

The right to associate for the common advancement of the association's beliefs is firmly protected by the Constitution. *Tashjian v. Republican Party,* 479 U.S. 208, 224 (1986) ("The Party's determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the constitution."); *Tree of Life Christian, Sch.*, 2012 U.S. Dist. LEXIS

32205 at *5 ("It is well established that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the freedom of speech" (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998)). The right to associate writ large is therefore intimately intertwined with the ability and right to do so privately. *AFL-CIO v. FEC*, 333 F.3d 168, 175 (D.C. Cir. 2003) (citing *Buckley*, 424 U.S. at 64-68) ("[C]ompelled disclosure of political affiliations and activities can impose just as substantial a burden on First Amendment rights as can direct regulation."); *see also Tashjian*, 479 U.S. at 214; *Tree of Life Christian, Sch.,* 2012 U.S. Dist. LEXIS 32205 at *4.

The First Amendment, therefore, protects from disclosure internal associational communications, including communications between separate entities that associate together to advance a common interest. *See Int'l Union, Etc. v. Nat'l Right to Work Comm.,* 590 F.2d 1139, 1147 (D.C. Cir. 1978) ("[T]he First Amendment's protection . . . extends not only to the organization itself, but also to its staff, members, contributors, *and others who affiliate with it.*") (emphasis added); *FEC v. Machinists Non-Partisan Political League,* 655 F.2d 380, 388-90 (D.C. Cir. 1981) (recognizing that the First Amendment protects groups from an FEC subpoena seeking, in part, "[a]ll materials concerning communications *among various groups* whose alleged purpose was to defeat the President . . . .") (emphasis added)*; see also Ohio Org. Collaborative v. Husted*, 2015 U.S. Dist. LEXIS 153279, *9 (S.D. Ohio

Nov. 12, 2015) ("[C]ompelled disclosure may be inappropriate when it negatively impacts an organization's ability to 'pursue collective effort to foster beliefs . . . .'" (quoting *NAACP*, 357 U.S. at 462-63)).

Communications between a national political party, its state affiliates, and other aligned entities are firmly within the scope of the privilege. *See AFL-CIO*, 333 F.3d at 171, 176-78; *see also* RNC Privilege Log at 1-3, 1:18-mc-31 (ECF No. 1-3) (Page ID# 165-169) (noting communications between Dr. Thomas Hofeller, RNC/RSLC redistricting expert and Mike Lenzo, Ohio House of Representatives Republican Caucus Counsel). Finally, the right to direct and organize Appellants' associations to effectively advocate for their positions and beliefs is paramount.

> The express constitutional rights of speech and assembly are of slight value indeed if they do not carry with them a concomitant right of political association. Speeches and assemblies are after all not ends in themselves but means to effect change through the political process. If that is so, there must be a right not only to form political associations but to organize and direct them in the way that will make them most effective.

*Ripon Soc.'y v. Nat'l Republican Party*, 525 F.2d 567, 585 (D.C. Cir. 1975); *see also Ohio Org. Collaborative v. Husted*, 2015 U.S. Dist. LEXIS 153279 at *12 ("The Court has no doubt that the compelled disclosure of such sensitive information in the context of highly charged litigation involving issues of great political controversy would have a chilling effect on plaintiffs' freedom of association by adversely impacting their ability to organize, promote their message(s), and conduct their affairs."); Oldham Aff. ¶ 18, 1:18-mc-31 (ECF No 11-2) (Page ID# 462-63);

Winkelman Aff. ¶ 21, 1:18-mc-31 (ECF No. 11-2) (Page ID# 469); Kincaid Aff. ¶ 27, 1:18-mc-31 (ECF No. 11-2) (Page ID# 475-76) (stating that disclosure will directly frustrate the organizations' ability to pursue their legal and political goals effectively).

Accordingly, to protect the constitutional rights of litigants, and especially of non-parties, the courts have developed the following framework to evaluate First Amendment privilege claims. First, the party asserting the privilege must make a *prima facie* case that disclosure could arguably infringe its First Amendment rights. *See Black Panther Party v. Smith*, 661 F.2d 1243, 1267-68 (D.C. Cir. 1981); *see also Tree of Life Christian, Sch.,* 2012 U.S. Dist. LEXIS 32205 at *7. Once a party asserting the privilege has satisfied the threshold for showing a First Amendment infringement, the burden then shifts to the party seeking disclosure. *Black Panther Party*, 661 F.2d at 1268; *see also In re Deliverance Christian Church*, 2011 Bankr. LEXIS 5219, *13 (N.D. Ohio 2011) (When the "prima facie case of entitlement to a First Amendment privilege . . . is satisfied, the party seeking discovery must demonstrate a compelling need for the information."). The party seeking disclosure must then show that the information sought is "crucial" or "goes to the heart of the matter." *Black Panther Party*, 661 F.2d at 1268; *In re Deliverance Christian Church*, 2011 Bankr. LEXIS 5219 at *13. Finally, if the party seeking disclosure shows that the information is "crucial" they must then show that they have exhausted every

reasonable alternative avenue of obtaining the information sought. *Black Panther Party*, 661 F.2d at 1268. Overall, disclosure must be kept to a minimum. *Id*. The decision below acknowledged that this basic framework governs the discovery sought by Plaintiffs, but applied the framework incorrectly.

        i.   The RNC, NRCC, and Kincaid Satisfied the Low Burden of a *Prima Facie* Case.

The district court correctly found that the RNC, NRCC, and Kincaid satisfied their burden of demonstrating *prima facie* harm. Order Granting Mot. Compel (ECF No. 128) (Page ID 3472-73). Specifically, the district court found that Appellants "have met their prima facie burden, that is, that they have shown an 'arguable First Amendment infringement.'" Order Granting Mot. Compel (ECF No. 128) (Page ID# 3473) (internal alterations omitted) (quoting *Tree of Life*, 2012 U.S. Dist. LEXIS 32205 at *6-7). This is because "the right to exchange ideas and formulate strategy in private is implicit in the right to associate with others to advance shared political beliefs" and "[d]isclosure of the types of internal documents at issue here may have a deterrent effect on the free flow of information within campaigns." Order Granting Mot. Compel (ECF No. 128) (Page ID# 3473) (citing *Perry*, 591 F.3d 1147). The district court's finding as to *prima facie* harm is reviewed for an abuse of discretion. *See Anwar,* 876 F.3d at 854.

In this instance, it is hard to argue that Appellants have not met the "light" threshold required to make a *prima facie* showing of First Amendment infringement.

*See Black Panther Party*, 661 F.2d at 1268. Because the right to associate, to formulate strategies, and to influence the political process is enshrined in the First Amendment, the burden to demonstrate a *prima facie* case of infringement is light. *Id.* at 1267-68; *Tree of Life Christian, Sch.,* 2012 U.S. Dist. LEXIS 32205 at *7 (a party must merely show "some probability that disclosure will lead to reprisal or harassment"); *N.Y. State NOW v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989).

Mr. Winkelman, NRCC General Counsel, Mr. Oldham, RNC's Redistricting Counsel, and Mr. Kincaid, all completed and signed affidavits detailing the harm the organizations and association will suffer should disclosure be compelled. They each specifically affirm that if they were compelled to disclose their internal communications, including: PowerPoint presentations used to update members and staff; analysis of the final Ohio Congressional District Map; talking points that were used to prepare members for discussing redistricting nationwide; such disclosure would drastically alter and adversely affect how they would communicate within the association in the future, including impacting the retention of talent. Winkelman Aff. ¶ 13-14, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468); Oldham Aff. ¶ 10-11, 1:18-mc-31 (ECF No 11-2) (Page ID# 461); Kincaid Aff. ¶ 18-19, 1:18-mc-31 (ECF No. 11-2) (Page ID# 474). In this specific instance, disclosure would deter NRCC members and staffers and other association participants from engaging in full and honest discussion about redistricting and the analysis of redistricting's impacts on

members' and their districts. Winkelman Aff. ¶ 14, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468); Oldham Aff. ¶ 11, 1:18-mc-31 (ECF No 11-2) (Page ID# 461); Kincaid Aff. ¶19, 1:18-mc-31 (ECF No. 11-2) (Page ID# 474). Knowing, discussing, and analyzing the impacts of redistricting—especially as it relates to assisting members in their elections and outreach—is a primary purpose of both the NRCC and RNC. Winkelman Aff. ¶ 14, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468); Oldham Aff. ¶ 11, 1:18-mc-31 (ECF No 11-2) (Page ID# 461); Kincaid Aff. ¶¶ 18-19, 1:18-mc-31 (ECF No. 11-2) (Page ID# 474).

The result of disclosure will work a detriment on the RNC and NRCC by hampering their ability to conduct their internal affairs and assist members in their elections. Winkelman Aff. ¶¶ 14, 21, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468-69); Oldham Aff. ¶¶ 11, 18, 1:18-mc-31 (ECF No 11-2) (Page ID# 461-62); Kincaid Aff. ¶¶ 19, 27, 1:18-mc-31 (ECF No. 11-2) (Page ID# 474-76); *see Perry*, 591 F.3d at 1163 (holding a party satisfied *prima facie* step where the party stated that it would "drastically alter" how the association communicated in the future and would thus "[b]e less willing to engage" in similar activity in the future); *see also Tree of Life Christian, Sch.,* 2012 U.S. Dist. LEXIS 32205 at *7; *cf. Virginia v. Hicks*, 539 U.S. 113, 119 (2003) ("Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech . . . harming not only themselves but

society as a whole, which is deprived of an uninhibited marketplace of ideas." (internal citations omitted)).

In addition to the aforementioned harms, there are very specific harms arising from this litigation. The district court's order forces Appellants to disclose sensitive documents to Democratic Party Plaintiffs, Covington & Burling, and the American Civil Liberties Union ("ACLU")[14]. Each of these are political opponents of the RNC and NRCC. Oldham Aff. ¶¶ 12-18, 1:18-mc-31 (ECF No 11-2) (Page ID# 461-63); Kincaid Aff. ¶¶ 21-27, 1:18-mc-31 (ECF No. 11-2) (Page ID# 474-76); Winkelman Aff. ¶¶ 15-21, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468-69). Former Attorney General Eric Holder is both a partner at Covington & Burling and the Chairman of the Democratic Party Redistricting Trust, a Democratic Party entity that advises Democratic members about redistricting. Winkelman Aff. ¶¶ 16, 21, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468-69); Oldham Aff. ¶¶ 13, 18, 1:18-mc-31 (ECF No 11-2) (Page ID# 461-63); Kincaid Aff. ¶¶ 22, 27, 1:18-mc-31 (ECF No. 11-2) (Page ID# 474-76). Disclosure of the withheld documents will frustrate the associational goals of assisting NRCC members win congressional seats because the mental impressions of the RNC, NRCC, and Kincaid will be disclosed to the very attorneys who will be advising Democratic legislators and Members of Congress. Winkelman

---

[14] Lest this court believe that the ACLU is truly a non-partisan organization, the ACLU has recently entered the political fray in support of liberal Democrats. *See* Resp. Suppl. Br. in Supp. (ECF No. 96) (Page ID#907 at n.4).

Aff. ¶ 21, 1:18-mc-31 (ECF No. 11-2) (Page ID# 469); Oldham Aff. ¶ 18, 1:18-mc-31 (ECF No. 11-2) (Page ID# 462-63); Kincaid Aff. ¶ 27, 1:18-mc-31 (ECF No. 11-2) (Page ID# 475-76). This will severely impair the RNC, NRCC, and Kincaid's ability to achieve their goals and retain talent. Winkelman Aff. ¶¶ 13-14, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468); Oldham Aff. ¶¶ 10-11, 1:18-mc-31 (ECF No. 11-2) (Page ID# 461); Kincaid Aff. ¶¶ 18-19, 1:18-mc-31 (ECF No. 11-2) (Page ID# 474); *see also AFL-CIO*, 333 F.3d at 176 (noting that the DNC and AFL-CIO affidavits would make it difficult to recruit volunteers). This is especially true because the RNC, NRCC, and Mr. Kincaid will likely conduct similar analyses following the next decennial census. Winkelman Aff. ¶ 21, 1:18-mc-31 (ECF No. 11-2) (Page ID# 469); Oldham Aff. ¶ 18, 1:18-mc-31 (ECF No 11-2) (Page ID# 462-63); Kincaid Aff. ¶ 27, 1:18-mc-31 (ECF No. 11-2) (Page ID# 475-76). *See AFL-CIO*, 333 F.3d at 176-77 (stating that disclosure of polling data, member mobilization campaigns, and state-by-state strategies would reveal to political opponents strategies and tactics that entity would likely use again implicates significant First Amendment interests and intrudes on the "privacy of association and belief" guaranteed under the First Amendment).

Given the abundant demonstration of likely harms and the resulting chill on Appellants' First Amendment rights, the district court was correct in finding *prima facie* harm. This Court should affirm the district court as to this specific finding.

### 1. Allegations of Violence, Economic Reprisals, or Harassment are not Required to Assert the First Amendment Privilege.

The district court erred when it reasoned that the threat to First Amendment rights is "far less compelling" when the disclosing party does not allege that disclosure would subject the disclosing party to "violence, economic reprisals, and . . . harassment." Order Granting Mot. Compel (ECF No. 128) (Page ID# 3476) (citing *AFL-CIO*, 333 F.3d at 177). If the courts limited First Amendment privilege only to cases where violence and physical harassment occurred, it would be a much narrower privilege and other courts would have so concluded. Rather, this district court's opinion would read into a constitutionally guaranteed right of association a clause that says "only where threats of violence, economic reprisals, and harassment are present." The First Amendment says nothing of the sort.

To illustrate this point, the district court mischaracterized what *AFL-CIO* actually said. After discussing "violence, economic reprisals, and . . . harassment" the sentence cited by the district court continues by stating that the difference between the affidavits that the Democratic National Committee ("DNC") submitted in *AFL-CIO*, and the facts asserted in *NAACP v. Alabama*, speak only to the strength of the First Amendment interests asserted, not to their existence. *AFL-CIO*, 333 F.3d at 176. In the end, the D.C. Circuit upheld the DNC's assertion of First Amendment privilege in a case involving potential criminal violations. *See id.* at 171, 175-76; 52

U.S.C. § 30109(d) (knowing and willful violations of the corporate contribution prohibition are criminal violations). Therefore, even though allegations of criminal wrongdoing provide a compelling interest to the information sought, *Perry*, 591 F.3d at 1161, the DNC's assertion of First Amendment privilege still succeeded. *AFL-CIO*, 333 F.3d at 171, 176-77. Ironically, it is now affiliates or allies of the DNC who are now seeking to limit the application of a privilege they found important when they were the target of discovery.

Second, while "violence, economic reprisals, and . . . harassment" are certainly *a way* to show of the potential chilling effect of disclosure, they are by no means the *only way*, and certainly nothing in the text of the First Amendment so narrowly limits application of this privilege. A party must merely "demonstrate an objectively reasonable probability that disclosure will chill associational rights." *Tree of Life Christian, Sch.,* 2012 U.S. Dist. LEXIS 32205 at *7. Some of the additional ways that a party may show a reasonable probability of chill is "membership withdrawal, discouragement of new members, or other . . . objective" consequences. *Id.* (quoting *Perry*, 591 F.3d at 1160) (internal alterations omitted). Appellants have presented significant record evidence through affidavits that disclosure will result in the drastic alteration of how Appellants conduct themselves, including how disclosure would adversely affect how they communicate in the future. *See* Resp'ts' Opp'n to Pls.' Mot. to Compel, 1:18-mc-31 (ECF No. 11) (Page

ID# 395-494). Therefore, Appellants have conclusively carried their *prima facie* burden.

ii. <u>The Documents Sought are not Crucial to Plaintiff-Appellees' Case.</u>

Since Appellants made the required *prima facie* showing, the burden then shifts to Plaintiff-Appellees. Once the burden shifts the party seeking disclosure must show that the information sought "goes to the heart of the matter," meaning that the information sought is "crucial" to the party's case. *Black Panther Party*, 661 F.2d at 1268; *see also Tree of Life Christian, Sch.,* 2012 U.S. Dist. LEXIS 32205 at *8. The party must "describe the information they hope to obtain and its importance to their case with a reasonable degree of specificity." *Id.* In contrast to the "light" *prima facie* showing required of the party asserting the privilege, the party seeking disclosure has a high burden in demonstrating that the information sought is "crucial" to their case. *Black Panther Party*, 661 F.2d at 1268. If the information is not crucial, then there is no compelling need to infringe the resisting party's constitutional rights. *Id.* Disclosure must therefore be kept to a minimum. *Id.*

Before determining if the information sought is "crucial" to Plaintiffs' case, it is important to determine *what* Plaintiffs' case actually is. The district court stated that Plaintiffs' partisan gerrymandering claims are important. Order Granting Mot. Compel at 9 (ECF No. 128) (Page ID 3473). But it is not clear whether Plaintiffs claims are even viable. *See, e.g., Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018)

(holding that plaintiffs lacked standing and ruling that a majority of the Supreme Court still had not ruled whether partisan gerrymandering claims are justiciable). The Supreme Court will decide the viability of partisan gerrymandering claims in March of this year. *See Rucho, et al. v. Common Cause, et al.*, No. 18-422 (U.S. Oct. 3, 2018) (argument set for March, jurisdiction postponed); *Lamone, et al. v. Benisek, et al.*, No. 18-726 (U.S. Dec. 6, 2018) (argument set for March, jurisdiction postponed) The exceedingly tenuous nature of Plaintiffs' claims heavily counsel in favor of overturning the district court's privilege order since compelled disclosure infringes upon Appellants' First Amendment rights under a theory the Supreme Court may—and in all likelihood will—later determine is not viable. Again, once disclosed, the documents cannot be undisclosed.

Even operating under the assumption that partisan gerrymandering claims are justiciable and, if so, that the district court is applying the correct standard, the district court still committed clear error. The district court was required to determine whether Plaintiff-Appellees satisfied their burden in establishing that the information Appellants withheld as privileged is "crucial" to establishing partisan intent. *See* Resps' Opp.'n to Pls.' Mot. to Compel (ECF No. 11) (Page ID# 423-426); *Black Panther Party*, 661 F.2d at 1268; Order Granting Mot. Compel (ECF No. 128) (Page ID# 3474). *Only when* the party seeking disclosure satisfies this burden must the Court then balance the threat to the First Amendment rights at stake

with the need for the information. *Black Panther Party*, 661 F.2d at 1267 ("Because of the preferred position of First Amendment rights, compelled disclosure is normally the end, and not the beginning, of the inquiry.") (internal alterations omitted) (quoting *Zerilli v. Smith*, 656 F.2d 705, 713 (D.C. Cir. 1981); *AFL-CIO v. FEC*, 333 F.3d 168, 176 (D.C. Cir. 2003) (although the evidence of First Amendment infringement was not as strong as in cases of reprisals and harassment, First Amendment harm still existed).

The district court committed clear error for the following reasons, either one of which is sufficient to warrant reversal: (1) the district court failed to shift the burden to Plaintiffs; and (2) the district court used the incorrect standard by requiring only that Appellants' documents are "relevant" to Plaintiffs' claims.

### 1. *The District Court Failed to Shift the Burden.*

"If the party opposing discovery establishes an arguable First Amendment infringement"—as Appellants have done here—"courts then shift the burden to the party seeking discovery." *Tree of Life Christian, Sch.*, 2012 U.S. Dist. LEXIS 32205 at *8. Rather than determining whether Plaintiffs satisfied their burden, the Court went straight to balancing the Plaintiffs' need for the information sought with the Respondents First Amendment rights. Order Granting Mot. Compel at 9 (ECF No. 128) (Page ID 3473). In other words, the district court never shifted the burden. *Id*.

This is clear error because a court must first determine if Plaintiffs satisfied their burden by demonstrating that the information sought is "crucial," *Black Panther Party*, 662 F.2d at 1268, or "highly relevant to the claims or defenses in the litigation." *Tree of Life Christian, Sch.*, 2012 U.S. Dist. LEXIS 32205 at *8-9. Then, only if the Plaintiffs have met this burden, the Court must determine if Plaintiffs exhausted all reasonable alternatives to obtaining the information sought. Only after the Plaintiffs have satisfied these successive burdens does the Court balance the interests of the parties. Resp'ts' Opp'n to Pls.' Mot. to Compel, 1:18-mc-31 (ECF No. 11) (Page ID# 412). Since the district court never held the Plaintiffs' demands for the information sought to the appropriate burden, it committed clear error.

Even if the district court properly shifted the burden, the Plaintiff-Appellees have failed to meet it. The Appellees themselves contributed to the district court's confusion in this matter because they, either intentionally or not, conflated "relevance" with the "crucial" standard. Appellees seek RNC, NRCC, and Kincaid's protected documents in order to prove partisan intent in the drawing of Ohio's congressional maps. Pls.' Mot. to Compel, 1:18-mc-31 (ECF No 1, 1-1) (Page ID# 1-30). However, the Supreme Court has been clear that proving partisan intent in the drawing of maps is not difficult since partisan bodies draw the maps. *See Bandemer*, 478 U.S. at 128-29 (plurality op.); *id.* at 175 (Powell, J. dissenting). Additionally, partisan intent is susceptible to expert testimony, *Easley v. Cromartie*, 532 U.S. 234,

246-53 (2001), and is equally susceptible to direct and circumstantial evidence, *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429U.S. 252, 266 (1977).[15]

Internal communications by the RNC, NRCC, and Kincaid regarding redistricting legislation are not crucial to proving partisan intent by the Ohio Legislature. *See Perry*, 591 F.3d at 1164-65. The information might be *relevant* to help identify the intent of Ohio legislators, or lead to evidence to impeach claims of legislative neutrality. *See id*. But that evidence is not crucial or highly relevant. *Id.* at 1164-65. In fact, the information sought, just like the information sought by plaintiffs in *Perry*, is too attenuated. *Id.* at 1165. Rather, much of the information sought here is discussions among the NRCC or RNC and members of its staff or of Congress and other Republican partisans. This would be a much different case if the requests here were to be limited only to communications with then-current state government officials in Ohio at the time the map was drawn. Instead, they are seeking internal communications within private organizations not even located in Ohio.

### 2. *The District Court Used the Incorrect Standard.*

The district court erred in determining that the documents Plaintiffs seek are "relevant" to their claim that national Republicans drew the Ohio congressional map

---

[15] Additionally, Plaintiffs could have sought information from the legislature directly if they had brought these claims years before now instead of prejudicing and burdening third-parties by their delay in bringing this action in the first instance.

instead of employing the correct "crucial" standard. Order Granting Mot. Compel (ECF No. 128) (Page ID# 3474) ("The documents sought by Plaintiffs *are relevant to their claim* that the Map was drawn not by the Ohio legislature, but by state and national Republican operatives acting with an intent to lock in a Republican majority in Ohio's U.S. congressional seats." (emphasis added)). This is clear error because the proper standard is not whether the documents sought are *relevant*. Rather, the proper standard is whether the documents sought are "*crucial*" or "*highly relevant.*" *Black Panther Party*, 661 F.2d at 1268 (emphasis added); *Perry*, 591 F.3d at 1161 (imposing a requirement that documents sought must be "highly relevant" and rejecting the relevancy standard); *Tree of Life Christian, Sch.*, 2012 U.S. Dist. LEXIS 32205 at *8-9. In this the district court committed clear error.

Furthermore, the district court misapplied the test to determine whether the information Plaintiff-Appellees seek is crucial to their claim. Instead, the district court stated that the information sought goes "to support a *crucial element* of their partisan gerrymandering claim." Order Granting Mot. Compel (ECF No. 128) (Page ID# 3476) (emphasis added). "Support[ing] a crucial element" cannot be and, in fact, is not the proper test. Instead, the proper test is that "the party seeking discovery must show the information sought is *highly relevant* to the *claims or defenses* in the litigation." *Tree of Life Christian, Sch.*, 2012 U.S. Dist. LEXIS 32205 at *8-9 (emphasis added) (quoting *Perry*, 591 F.3d at 1161). If merely "support[ing] a

crucial element" were the test, then parties seeking discovery would always satisfy this prong of the First Amendment privilege analysis. *All elements* to a claim are "crucial" to establishing that claim. Instead, the case law requires Plaintiffs prove that the information sought is "crucial" or "highly relevant" *to proving a claim*— here that the Ohio Legislature acted with partisan intent. *Black Panther Party*, 661 F.2d at 1268; Perry, 591 F.3d at 1161 ("Importantly, the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation — a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)."); *see also Tree of Life Christian, Sch*., 2012 U.S. Dist. LEXIS 32205 at *8-9. Once again, the primary thrust of the discovery sought here is internal communications inside non-governmental political organizations and is not limited to communications or discussions with state government officials.

The district court is also incorrect even if one assumes, *arguendo*, that its enunciated standard is the correct one. The district court stated that "[t]he documents sought by Plaintiffs are relevant to their *claim* that the Map was drawn, not by the Ohio Legislature, but by state and national Republican operatives acting with an intent to lock in a Republican majority in Ohio's U.S. congressional seats." Order Granting Mot. Compel (ECF No. 128) (Page ID# 3474) (emphasis added). However, Plaintiff-Appellees merely *allege* that national Republican groups drew the map. The *claim* Plaintiff-Appellees must prove is not that "national Republican

operatives" drew the map but that their First Amendment and Fourteenth Amendment rights were violated by state government actors. Both the First Amendment and Fourteenth Amendment claims require proof of discriminatory intent by the governmental actors themselves. Resp'ts' Opp'n to Pls.' Mot. to Compel, 1:18-mc-31 (ECF No. 11) (Page ID# 423). The question then is whether the information sought is crucial to Appellees proving the discriminatory intent of the Ohio Legislature and not simply relevant to an allegation in the complaint. *See Black Panther Party*, 661 F.2d at 1268; *Perry*, 591 F.3d at 1161. And, once again, the district court did not limit its order to communications with actual governmental officials but rather has required disclosure of internal communications inside non-governmental political organizations.

If this Court affirms the district court's "crucial-to-allegations-contained-in-the-Complaint" standard, then the rule in this Circuit will be even more relaxed than the rule enunciated in the Federal Rules of Civil Procedure for simply seeking discovery. The Rules require a discovery request to be anchored in a claim, *see* Fed. R. Civ. P. 26(b)(1), as distinguished from a mere allegation. In effect, the First Amendment privilege would be deemed a nullity, or at the very least append language to the First Amendment's associational privilege that does not appear in the text.

Furthermore, if this Court affirms the district court and holds that the First Amendment privilege can be overruled if information is merely "relevant" "to support a crucial element of [Plaintiffs'] gerrymandering claim", Order Granting Mot. Compel (ECF No. 128) (Page ID# 3476), as opposed to being crucial to a claim, then the associations' First Amendment rights are subject to the artful pleading of political enemies. *AFL-CIO*, 333 F.3d at 178 (stating that the FEC's automatic disclosure of enforcement documents "encourages political opponents to file charges against their competitors to serve the dual purpose of 'chilling' the expressive efforts of their competitor and learning their political strategy so that it can be exploited to the complainant's advantage.").

a. *The District Court Improperly Disregarded the Directly Analogous Situation Presented in Perry v. Schwarzenegger.*

The district court did not address the RNC's NRCC's, and Kincaid's arguments regarding the Ninth Circuit's decision in *Perry*. *Perry* is simply the best and most analogous decision to the specific question before this Court. Since *Perry* is vitally informative to this case, it is important to go into its background in some depth.

The plaintiffs in *Perry* claimed that Proposition 8[16] violated their rights guaranteed under the Equal Protection Clause of the Fourteenth Amendment. *Perry*, 591 F.3d at 1152. Plaintiffs alleged that Proposition 8 was adopted with "disapproval or animus against a politically unpopular group." *Id*. at 1152. Plaintiffs sought the official Proposition 8 ballot committee's[17] "internal campaign communications relating to campaign strategy and advertising" through discovery. *Id*. Because the Proposition 8 Proponents actually wrote the ballot language and actively urged California voters to vote for it, their internal campaign communications about strategies were relevant to determining the central claim: whether Proposition 8 Proponents were appealing to the illicit biases of voters. *Perry*, 591 F.3d at 1164. The information was also relevant because it could lead to impeachment evidence that the ballot committee's claims that Proposition 8 served a legitimate state interest. *Id*. After ruling that the Proposition 8 ballot committee had made a *prima*

---

[16] Proposition 8 was a California state constitutional amendment that was passed by referendum in 2008 outlawing same-sex marriage and was subsequently declared unconstitutional. *See Perry v. Brown*, 671 F.3d 1052, 1063-64 (9th Cir. 2012).

[17] The members of the official Proposition 8 ballot committee were, in effect, the legislators of Proposition 8. *See* Cal. Elec. Code § 342 (defining proponents of a ballot initiative as those who submit the text of the proposed initiative); *see also Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2659, 2662 and n.7 (2015) (holding that in Arizona, like California, legislative power is vested in the people through the initiative process).

*facie* case of First Amendment harm, the Ninth Circuit then addressed whether the information that plaintiffs sought was highly relevant. *Perry*, 591 F.3d at 1163-64.

After conducting this analysis, the Ninth Circuit found that the information desired was privileged under the First Amendment. The Ninth Circuit reasoned that the Proposition 8 committee had agreed to produce all communications disseminated to voters, including "communications targeted to discrete voter groups." *Id*. at 1164-65. Messages "designed to appeal to voters' animosity toward gays and lesbians is a question that appears susceptible to expert testimony, without intruding into private aspects of the campaign." *Id*. at 1165. The information sought by the plaintiffs in *Perry* was not highly relevant and therefore not subject to discovery. *Id*.  Once again, the district court did not limit its disclosure order to communications with state government officials, but rather required disclosure of internal communications within a non-governmental political organization.

The district court failed to address the Ninth Circuit's reasoning, which directly tracks the case law on the subject.  If the documents sought in *Perry* were not crucial to proving unconstitutional animus, then the information sought here is similarly not crucial. Resp'ts' Opp'n to Pls.' Mot. to Compel, 1:18-mc-31 (ECF No. 11) (Page ID# 423-433). By way of direct comparison, if the documents containing internal strategy communications within the Proposition 8 committee were not crucial or highly relevant to proving animus, then the information Plaintiff-

Appellees seek about illicit intent on the part of the Ohio Legislature is equally not crucial or highly relevant. *See Perry*, 591 F.3d at 1165. This comparison is uniquely relevant since the complaints in both cases allege similar unconstitutional intent and animus. *Compare* Second Amend. Compl. ¶¶ 52-55 (ECF No. 37) (Page ID# 302-303) (stating that the national Republican Party drew Ohio's congressional districts with intent to entrench a Republican congressional majority) *with Perry v. Schwarzenegger*, No. 09-02292 (N.D. Cal. May 22, 2009) (ECF 1-1) (Compl. ¶ 43) (stating that Proposition 8 was adopted as a result of animus against a politically unpopular group and that the history of Proposition 8's adoption shows that it was backlash against rights recently conferred upon gays and lesbians). Even the Ninth Circuit in *Perry* limited the disclosure required to external communications, and at the very least here the district court should have limited its order to override the privilege only insofar as communications by the RNC, NRCC or Kincaid involved state government officials. The fact that the district court failed to address this argument, or similarly limit its order, is further evidence of the court's clear error.

### iii.  Plaintiff-Appellees did not Exhaust Every Reasonable Alternative Source of Information.

Once the party seeking disclosure has overcome its burden showing the information requested is crucial to their case—which Appellees have not done— they must then show that they have exhausted every reasonable alternative avenue of obtaining the information sought. *Id.* If a less intrusive means of obtaining the

information exists, the party seeking disclosure must use that means. *Perry*, 591 F.3d at 1161. The district court, in a conclusory analysis, states that "Plaintiffs have engaged in an extensive effort to obtain relevant[18] documents from other sources." Order Granting Mot. Compel (ECF No. 128) (Page ID# 3475). The court then goes on to list some of the examples outlining Plaintiffs attempts to secure documents. *Id.* The fact remains that it is the Plaintiff-Appellees themselves who are to blame for their inability to secure documents. Appellees waited *seven years* and *three election cycles* to bring their claims. *See* Compl. (ECF No. 1) (Page ID# 1-50). Appellees have also admitted this is a significant issue in their attempts to secure documents because there has been "[a]n astonishing level of memory loss [which] leads Plaintiffs to continue to pursue these documents from the RNC, NRCC, and Mr. Kincaid." Pls.' Supplemental Mem. (ECF No. 97) (Page ID# 922). At some point simple principles of equity must enter into the judiciary's considerations. This Court should not abdicate the RNC, NRCC, and Mr. Kincaid's First Amendment rights simply because the Appellees were not diligent in pursuing their claims. *See generally NAACP v. NAACP Legal Def. & Educ. Fund, Inc.,* 753 F.2d 131, 137 (D.C. Cir. 1985) ("Laches is founded on the notion that equity aids the vigilant and not

---

[18] This once again misapprehends the threshold showing required in the First Amendment privilege context.

those who slumber on their rights."); *ACLU of Ohio v. Taft,* 385 F.3d 641, 647 (6th Cir. 2004).

In any event, Plaintiff-Appellees have obtained significant amounts of discoverable information. For example, they have received legislative emails and were able to seek legislative communications through freedom of information requests. Resp'ts' Opp'n to Pls.' Mot. to Compel, 1:18-mc-31 (ECF No. 11) (Page ID# 431-32); *see* Jim Slagle, Ohio Redistricting Transparency Report The Elephant in the Room, 16-18, 21[19] (quoting emails from Senator Niehaus, Ray DiRossi, Heather Mann and stating that Plaintiff League of Women Voters of Ohio, in response to its freedom of information act request received documents from "Governor Kasich, Senator Niehaus, Senator Faber, Leader Budish, Heather Mann, Ray DiRossi, and the Legislative Services Commission . . . .").[20] Appellees' delay

---

[19] Available at https://my.lwv.org/sites/default/files/leagues/wysiwyg/%5Bcurrent-user%3Aog-user-node%3A1%3Atitle%5D/the_elephant_in_the_room_-_transparency_report.pdf (last visited Dec. 24, 2018).

[20] The district court's reliance on *Bethune-Hill* is misplaced. *See* Order Granting Mot. Compel, 11 n.5 (ECF No. 128) (Page ID# 3475). The district court takes out of context the statement that "officials seldom, if ever, announce on the record that they are pursuing a particular course of action . . . ." Order Granting Mot. Compel at 11 n.5 (ECF No. 128) (Page ID# 3475). The court in *Bethune-Hill* made that statement in the context of overruling a legislative privilege objection. The argument the court was rejecting was that plaintiffs there could obtain the information they sought— legislative intent in redistricting case—from "special interest group position papers, press releases, newspaper articles, census reports, registered voter data and election returns." *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 341 (E.D.

in bringing their claims and ability to obtain significant amounts of discoverable information from other sources counsels against forced production here.

### b. **The RNC, NRCC, and Kincaid Affidavits are Sufficient to Support a First Amendment Privilege Claim.**

The district court applied the incorrect standard when evaluating how the First Amendment privilege is asserted. Primarily, the court was mistaken that the RNC, NRCC, and Kincaid's affidavits are conclusory, containing "boilerplate" language that did not explain how disclosure would impact the RNC's, NRCC's, and Kincaid's internal operations. Order Granting Mot. Compel (ECF No. 128) (Page ID# 3476).

The affidavits gave substantive descriptions of the documents withheld, *see* Winkelman Aff. ¶ 9, 1:18-mc-31, (ECF No. 11-2) (Page ID# 465-66); Oldham Aff. ¶ 7, 1:18-mc-31, (ECF No. 11-2) (Page ID# 459-60); Kincaid Aff. ¶¶ 14, 1:18-mc-31, (ECF No. 11-2) (Page ID# 473-74), described that the documents contained mental impressions and strategies, *see* Winkelman Aff. ¶¶ 12, 14, 1:18-mc-31, (ECF No. 11-2) (Page ID# 468); Oldham Aff. ¶¶ 9, 11, 1:18-mc-31, (ECF No. 11-2) (Page ID# 461); Kincaid Aff. ¶¶ 17, 19, 1:18-mc-31, (ECF No. 11-2) (Page ID# 474), and explained why disclosure to Plaintiffs would harm the association and frustrate the

---

Va. 2015) (three-judge court). This is far afield from the situation presented here where Plaintiffs have obtained legislative emails.

internal workings of the association, *see* Winkelman, Aff. ¶¶ 13-14, 16, 21, 1:18-mc-31, (ECF No. 11-2) (Page ID# 468-69); Oldham Aff. ¶¶ 10-13, 17-18, 1:18-mc-31, (ECF No. 11-2) (Page ID# 461-63); Kincaid Aff. ¶¶ 18-19, 21-22, 26-27, 1:18-mc-31, (ECF No. 11-2) (Page ID# 474-75).[21]

Accordingly, these affidavits are anything but conclusory. In fact, these affidavits are consistent with what courts have held as sufficient to demonstrate that the First Amendment privilege applies. *See AFL-CIO*, 333 F.3d at 176-77 (stating that disclosure of polling data, member mobilization campaigns and state-by-state strategies would reveal to political opponents strategies and tactics that entity would likely use again implicates significant First Amendment interests and intrudes on the "privacy of association and belief" guaranteed under the First Amendment); *Perry*,

---

[21] The district court also questioned the credibility of Mr. Oldham's affidavit and privilege log. To be clear, this appeal is limited to the First Amendment privilege claims only. This includes the documents contained on the RNC's privilege log where the First Amendment privilege is asserted. But the district court questions the credibility of Mr. Oldham's second affidavit as it pertains to the RNC's attorney work-product assertion. *See* Order Granting Mot. Compel at 17 n.8 (ECF 128) (Page ID# 3481). The district court is factually incorrect in its assertion that the RNC did not explain whether Dr. Hofeller or Mr. Wild were working at the direction of counsel. The RNC did in fact explain that Dr. Hofeller and Mr. Wild worked at the direction of RNC counsel. The RNC also explained that the documents were created in anticipation of litigation. *See* Resp. Opp.'n to Mot. to Compel at 35, 37 (ECF 11) (Page ID# 436, 438). Accordingly, the district court's questioning of Mr. Oldham's affidavit is unfounded. *See F&J Enterprises, Inc. v. Columbia Broadcasting Systems, Inc.*, 373 F. Supp. 292, 299 (S.D. Ohio 1974) ("The contention . . . that [a]ffidavits are merely self serving, absent some showing . . . that the attestations are untrue or were made in bad faith, is insufficient to divest defendants of their first amendment privilege.").

591 F.3d at 1163; *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 492-93 (10th Cir. 2011) (Kelly, J., concurring).

The district court also took issue with the volume of documents over which Appellants' have asserted privilege. *See* Mem. Op. (ECF No. 128) (Page ID# 3476) ("Respondents attempt to shield five bankers' boxes of documents from discovery . . . ."). The reality is that Appellants only asserted First Amendment privilege over approximately 500 total documents. However, some of the documents—especially those containing computer shapefiles[22]—contain a significant number of pages when printed. All that aside, the volume of documents withheld is simply not evidence for or against anything. *See AFL-CIO*, 333 F.3d at 172 (the AFL-CIO and the DNC petitioned to withdraw 6,000 pages of documents from public view and to prevent the disclosure of 10,000-20,000 more pages of documents). Therefore the district court committed clear error in so far as it asserted that Appellants' affidavits insufficient and their withheld documents to voluminous.

**III.    The District Court's Confidentiality Order is Insufficient to Protect the RNC, NRCC, and Kincaid's Interests.**

Plaintiff-Appellees will likely argue, as they have previously, that since a protective order exists in this case, there is no possibility of harm to Appellants' First

---

[22] A shapefile is essentially a computer file that tells a geographic information systems ("GIS") program where to draw lines on a map.

Amendment rights. No. 18-mc-31 (ECF No. 1-1) (Page ID# 12). In fact, Plaintiff-Appellees go so far as to exclaim that "the presence of a protective order . . . alleviates *any* concern that the information will be used for any purpose other than pursuing this litigation." *Id.* (emphasis added). This assertion is demonstrably false on multiple fronts.[23]

A protective order is not sufficient to mitigate the chill of First Amendment rights. *Perry*, 591 F.3d at 1160-61 n.6. This is especially true where, as here, the entity whose information is sought claims First Amendment harm precisely due to disclosure to the very party seeking that disclosure. *Id.*; *Ohio Org. Collaborative*, 2015 U.S. Dist. LEXIS 153279 at *13-14 ("It is the very fact that defendants would have access to this sensitive information that gives rise to the Democratic Party's First Amendment concerns. The protective order proposed by defendants would not alleviate those First Amendment concerns."); *see also AFL-CIO*, 333 F.3d at 176-77 (noting that the DNC's and AFL-CIO's affidavits were specifically concerned with disclosure to their political opponents, not just the public at large); *In re First Nat'l Bank*, 701 F.2d 115, 118 (10th Cir. 1983) (stating that it is readily apparent that

[23] As discussed *supra*, Appellants have agreed to produce documents under an attorneys'-eyes-only provision during the pendency of this appeal. This provision limits the scope of disclosure of documents to only the attorneys working on this specific case. Additionally, it provides for the eventuality that, should this Court overturn the district court on appeal, all documents, copies, as well as those documents created as a result of the production, be destroyed. Order Granting Mot. Compel (ECF No. 128) (Page ID# 3482)

a subpoena from the IRS issued to a tax protestor group chills speech); *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002) (rejecting the contention that a protective order would decrease the chill imposed on First Amendment rights because the party asserting the privilege feared disclosure to the government itself and, therefore, disclosure to it, no matter how narrowly confined under a protective order, did not assuage the chill of First Amendment rights); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (holding that the First Amendment privilege applies with equal force in cases involving all private parties). This is precisely the case here.

Disclosure even under the protective order does not provide any protection to the RNC's, NRCC's, and Kincaid's First Amendment rights. The protective order in this case permits disclosure to the following: Democratic Party plaintiffs; counsel to the Democratic Party plaintiffs; and persons employed at the offices of counsel. Protective Order at ¶4(a) (ECF No. 57) (Page ID# 604). There is no limitation that disclosure is only to attorneys who have appeared in the litigation; instead, any of the attorneys at Covington & Burling, including Eric Holder,[24] can obtain the

---

[24] As stated *supra*, Eric Holder is both a partner at Covington & Burling and the Chairman of the Democratic Party Redistricting Trust, a Democratic Party entity that advises Democratic members about redistricting. Winkelman Aff. ¶¶ 16, 21, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468-69); Oldham Aff. ¶¶ 13, 18, 1:18-mc-31 (ECF No 11-2) (Page ID# 462-63); Kincaid Aff. ¶¶ 22, 27, 1:18-mc-31 (ECF No. 11-2) (Page ID# 475-76).

disclosures and learn about the RNC's, NRCC's, and Kincaid's strategies and analysis. Oldham Aff. ¶¶ 10, 11, 13, 18, 1:18-mc-31 (ECF No 11-2) (Page ID# 461-63); Kincaid Aff. ¶¶ 18, 19, 22, 27, 1:18-mc-31 (ECF No. 11-2) (Page ID# 474-76); Winkelman Aff. ¶¶ 13, 14, 16, 21, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468-69). Accordingly, the protective order does nothing to mitigate the First Amendment harm because even with the protective order in place, the RNC, NRCC, and Kincaid must disclose documents to precisely the entities that precipitate the First Amendment harm. *See, e.g., Ohio Org. Collaborative*, 2015 U.S. Dist. LEXIS 153279 at *13-14; *Tree of Life Christian, Sch.*, 2012 U.S. Dist. LEXIS 32205 at *12-13; *AFL-CIO*, 333 F.3d at 176-77; *Int'l Action Ctr.*, 207 F.R.D. at 3; *see also* Oldham Aff. ¶¶ 10-18, 1:18-mc-31 (ECF No 11-2) (Page ID# 461-63); Kincaid Aff. ¶¶ 18-27, 1:18-mc-31 (ECF No. 11-2) (Page ID# 474-76); Winkelman Aff. ¶¶ 13-21, 1:18-mc-31 (ECF No. 11-2) (Page ID# 468-70).

Furthermore, in order to prevent the disclosed documents from being publicly disclosed in trial proceedings, the burden will be shifted against Appellants. Protective Order ¶6 (ECF No. 57) (Page ID# 605). This would effectively turn the analysis of *prima facie* harm on its head. Currently, the RNC, NRCC, and Kincaid must met a *prima facie* burden that then requires the Democratic Plaintiffs to demonstrate a compelling need for the documents. *See, e.g.*, *Perry*, 591 F.3d at 1161. With only a protective order in place at trial, the burden is placed on Appellants to

continue to protect their documents from public disclosure. In order to do so they will have to adduce "compelling reasons" to file documents under seal and show that these reasons "outweigh the public's interest in access to court records[.]" Protective Order ¶6 (ECF No. 57) (Page ID# 605). Then, Appellants must show that the documents they wish to seal are narrowly tailored to support their compelling reasons. *Id*.

Accordingly, the protective order in this case does nothing to thaw the chill on Appellants' First Amendment rights. In fact, it actually increases the chill on their First Amendment rights since it imposes a substantial burden to keep documents from being disclosed and specifically directs disclosure to the very people—Appellants' political opponents—who cause the chill in the first place.

## CONCLUSION

For the aforementioned reasons, this Court should reverse the district court's denial of Appellants' assertion of First Amendment privilege.

January 4, 2019                                        Respectfully submitted,

*/s/Jason Torchinsky*
Jason Torchinsky
Shawn Sheehy
Phillip M. Gordon
Holtzman Vogel Josefiak
Torchinsky PLLC
45 N. Hill Drive, Suite 100
Warrenton, VA 20186
P: (540) 341-8808
F: (540) 341-8809

Jtorchinsky@hvjt.law
ssheehy@hvjt.law
pgordon@hvjt.law
Counsel for Appellants

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements.**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because the brief contains 12,960 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman style.

/s/ Jason Brett Torchinsky
*Attorney for Appellants*

# CERTIFICATE OF SERVICE

The undersigned herby certifies that the Brief of Appellants was electronically filed with the Sixth Circuit Court of Appeals on January 4, 2019. The Brief of Appellants was served by ECF on January 4, 2019, on counsel for Appellees. The address for Counsel for the Appellees:

| | |
|---|---|
| Michael C. Baker<br>Covington & Burling LLP<br>One City Center 850 Tenth Street NW<br>Washington, DC  20001 | Freda J. Levenson<br>ACLU of OHIO<br>4506 Chester Avenue<br>Cleveland, OH  44103 |
| Robert D. Fram<br>Covington & Burling LLP<br>One Front Street 35 Floor<br>San Francisco , CA  94111 | Theresa J. Lee<br>American Civil Liberties Union<br>Foundation<br>125 Broad Street 18th Floor<br>New York, NY  10004 |
| Tiffany Alora Thomas<br>American Civil Liberties Union<br>Foundation<br>125 Broad Street 18th Floor<br>New York, NY  10004 | Paul Frederick Moke<br>Paul Moke, Attorney at Law<br>6848 W. State Route 73<br>Wilmington, OH  45177 |

*/s/Jason Torchinsky*
Jason Torchinsky
Counsel for Appellants

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS
## 1:18-cv-357

| ECF No. 1 | Complaint | Page ID# 1-50 |
|---|---|---|
| ECF No. 37 | Second Amended Complaint | Page ID# 286-339 |
| ECF No. 57 | Protective Order | Page ID# 599-610 |
| ECF No. 96 | Respondents Supplemental Memorandum Opposing Plaintiffs' Motion to Compel | Page ID# 904-917 |
| ECF No. 97 | Plaintiffs' Supplemental Memorandum Supporting their Motion to Compel | Page ID# 918-925 |
| ECF No. 111 | Order Conditionally Granting Plaintiffs Motion to File Under Seal | Page ID# 1017-1021 |
| ECF No. 126 | Respondents' Supplemental Memorandum in Opposition to Plaintiffs' Motion to Compel (sealed) | Page ID# 3198-3208 |
| ECF No. 128 | Order Granting Motion to Compel | Page ID# 3465-3483 |
| ECF No. 129 | Emergency Motion to Stay Pending Appeal | Page ID# 3484-3501 |
| ECF No. 130 | Notice of Appeal | Page ID# 3502-3504 |
| ECF N/A | Notation Order: Denying Emergency Motion to Stay and Ordering Production | Page ID# N/A (December 28, 2018 docket entry) |
| ECF N/A | Notation Order: Ordering Production | Page ID# N/A (January 3, 2019 docket entry) |

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS
## 1:18-mc-31
## (*transferred from the United States District Court for the District of Columbia and consolidated with 1:18-cv-357*)

| ECF No. 1 | Motion to Compel | Page ID# 1-2 |
|---|---|---|
| ECF No. 1-1 | Memorandum in Support of Motion to Compel | Page ID# 3-30 |
| ECF No. 1-3 | Subpoena to the Republican National Committee | Page ID# 40-55 |

| ECF No. 1-3 | Subpoena to the National Republican Congressional Committee | Page ID# 56-71 |
|---|---|---|
| ECF No. 1-3 | Subpoena to Adam Kincaid | Page ID# 72-88 |
| ECF No. 2 | Movants' Motion to Transfer and Expedite | Page ID# 292-301 |
| ECF No. 6 | Order Granting Motion to Expedite | Page ID# 305 |
| ECF No. 9 | Respondents' Memorandum in Opposition to Motion to Transfer | Page ID# 313-388 |
| ECF No. 11 | Respondents' Memorandum in Opposition of Movants' Motion to Compel (incorrectly docketed as "opposition to Transfer Case" | Page ID# 395-494 |
| ECF No 11-1 | Declaration of Shawn T. Sheehy | Page ID# 442-444 |
| ECF No. 11-2 | Affidavit of Dalton Oldham | Page ID# 458-463 |
| ECF No. 11-2 | Affidavit of Chris Winkelman | Page ID# 464-470 |
| ECF No. 11-2 | Affidavit of Adam Kincaid | Page ID# 471-476 |
| ECF No. 13 | Order Granting Motion to Transfer | Page ID# 495-496 |